**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Cr. No. 09-2968 RB** |
| | ) | |
| DANIEL RAMON MUÑOZ | ) | |
| (a/k/a "Rhino"), and | ) | |
| NATHAN ARCHULETA | ) | |
| (a/k/a "Enemy"), | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter came before the Court on Defendants' motions to sever and for relief from prejudicial joinder. (Docs. 158, 182, 185 & 187.)  Having fully considered the parties' arguments for and against each motion, the Court finds that under Federal Rule of Criminal Procedure 14(a) a joint trial would be prejudicial and hereby severs the Defendants' trials in the interest of justice. The Court will not, however, sever the individual counts against Defendants.  By severing the trials of Defendants, the Court has substantially reduced the potential for any prejudice, and therefore, concerns of judicial economy and expediency clearly outweigh any slight potential for prejudice that may remain.  Accordingly, the Court hereby (1) grants Defendant Muñoz' Motion to Sever (Doc. 158); (2) grants Defendant Archuleta's Motion for Relief from Prejudicial Joinder (Doc. 182); (3) denies Defendant Archuleta's Motion to Sever Counts (Doc. 185); and (4) denies Defendant Muñoz' Second Motion to Sever. (Doc. 187.)

I.       BACKGROUND

An indictment (Doc. 34) in this case issued on October 8, 2009 charging two counts against

five defendants.  A superseding indictment (Doc. 98) issued on December 3, 2009 charging four

counts against six defendants.  Four of the defendants then entered guilty pleas, leaving only

Defendants Archuleta and Muñoz.  On March 10, 2010, the government superseded the indictment

a second time (Doc. 168), charging Defendants Muñoz and Archuleta with eight counts:

-Counts 1 and 4: 21 U.S.C. § 846: Conspiracy;
-Counts 2 and 3: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A): Possession with Intent to Distribute
50 Grams and More of Methamphetamine; 18 U.S.C. § 2: Aiding and Abetting;
-Count 5: 18 U.S.C. §§ 922(g)(1) and 924(a)(2): Felon in Possession of a Firearm and
Ammunition;
-Count 6: 18 U.S.C. § 924(c)(1)(A)(I): Carrying a Firearm During and in Relation to a Drug
Trafficking Crime and Possession of a Firearm in Furtherance of a Drug Trafficking Crime;
-Count 7: 21 U.S.C. § 844(a): Possession of Methamphetamine; and
-Count 8: 18 U.S.C. § 751: Attempted Escape.

Defendants Archuleta and Muñoz were charged jointly in counts 1 and 2 with a conspiracy

to possess and distribute methamphetamine on or about July 2–3, 2009 and possession of

methamphetamine with intent to distribute on or about July 2, 2009.  Defendant Muñoz was charged

individually in counts 3 and 8 with possession of methamphetamine with intent to distribute on or

about July 3, 2009 and attempted escape beginning in December 2009 and continuing to February 5,

2010.  Defendant Archuleta was charged individually in counts 4, 5, 6, and 7 with conspiracy to

possess and distribute methamphetamine between June 1, 2009 and November 5, 2009, being a felon

in possession of a firearm on November 5, 2009, carrying a firearm in relation to a drug trafficking

crime on November 5, 2009, and possession of methamphetamine on November 5, 2009.

Defendant Muñoz filed a Motion to Sever (Doc. 158) on February 10, 2010 arguing that a

joint trial would be prejudicial.  The government filed a response (Doc. 159) on February 24, 2010.

Then, after the second superseding indictment issued, Defendant Archuleta filed a Motion for Relief

from Prejudicial Joinder (Doc. 182) on April 19, 2010, arguing that he would be prejudiced if tried

jointly with Mr. Muñoz.  Defendant Archuleta also filed a Motion to Sever Counts (Doc. 185) the

same day, requesting that counts 1 & 2 be severed from counts 4, 5, 6, and 7 as the July and

November conspiracies to possess methamphetamine with the intent to distribute (counts 1 & 4)

were factually unrelated.  Defendant Muñoz filed a Second Motion to Sever (Doc. 187) on April 19,

2010 seeking to sever count 8 from the other charges against him, arguing that the escape charge

in count 8 was not sufficiently connected to the other charges to be properly joined.  The

government filed an Omnibus Response to Defendants' Motions Regarding Severance and Joinder

(Doc. 198) on May 5, 2010 arguing that all defendants and counts should be tried jointly.

## II.     FACTUAL BACKGROUND

This case arose out of an alleged conspiracy between co-defendants Archuleta and Muñoz

to smuggle methamphetamine from Mexico to the United States in young women's vaginal tracts.

Defendants are alleged to be members of the Sureños gang and to have worked together and used

their gang connections in furtherance of this conspiracy.  The government has alleged the following

facts in support of its assertion that all defendants and counts should be tried jointly:

In early July 2009, Defendant Archuleta asked a young, female college student named Amy,

with whom he had recently begun a romantic relationship, if she would help him smuggle narcotics

from Mexico to the United States in exchange for money.  Amy agreed, and around noon on July 2,

2009, Amy and Archuleta met up with coconspirators Charlie and Betty at their apartment in

Albuquerque.  Charlie was also affiliated with the Sureños gang and lived in an apartment with his

sister Betty.  Charlie had agreed to drive Archuleta, Amy, and Betty to Las Cruces to meet up with

Defendant Muñoz.  On the drive to Las Cruces, Archuleta and Amy discussed the proposed

smuggling venture with Betty and solicited her participation.

When Archuleta, Charlie, Amy, and Betty arrived in Las Cruces, they proceeded to Defendant Muñoz' apartment where they met Muñoz and his girlfriend, Angela.  Muñoz and Archuleta continued to pressure Betty to make the trip and also pressured Charlie to allow them to use his car for the trip.  With the promise of money, both Charlie and Betty agreed.  Amy and Betty then set off for Palomas, Mexico in Charlie's car.  On the way, they stopped in Deming, New Mexico to pick up David, who would serve as their guide and escort while in Mexico.

In Palomas, Amy and Betty went to the home of an elderly woman who removed a jar filled with methamphetamine from the refrigerator.  David then wrapped the drugs in plastic and duct tape so that they could be inserted into Amy and Betty's vaginal tracts.  Amy and Betty eventually loaded over 300 grams of methamphetamine into their vaginas; however, the packages were rather large, and a portion of Amy's package protruded from her vagina.

When attempting to re-enter the U.S. from Mexico, a drug dog at a U.S. Border Patrol checkpoint alerted to Charlie's car, and Amy, Betty, and David were pulled into a secondary inspection area.  When a female Border Patrol officer performed a pat down on Amy, she felt an object protruding from her groin area.  The packages of methamphetamine were discovered, and Amy, Betty, and David were arrested.  The following day, July 3, 2009, Archuleta and Charlie drove back to Albuquerque with a female friend of Archuleta's, as Charlie's car had been seized at the checkpoint.  When Archuleta and Charlie parted company, Archuleta told him that he was going on the run.

That same day, July 3, 2009, Defendant Muñoz made another attempt to smuggle methamphetamine into the United States using the same scheme.  Muñoz and two Sureño companions went to the apartment of a Las Cruces woman named Edith.  One of Muñoz' companions showed Edith his gun and told her that she had to go to Palomas, Mexico to get

something for him.  Edith drove to Mexico and retrieved the drugs, but on her way back to the U.S., she was stopped at a Border Patrol checkpoint.  When Edith exited her car, a package containing over 100 grams of methamphetamine fell out through the bottom of her pants.  The Border Patrol Agents then arrested her.

Defendant Muñoz was arrested in Las Cruces on July 29, 2009 after Amy identified his apartment to federal agents.  In early August 2009, federal agents also tracked down Charlie at his Albuquerque apartment.  Charlie admitted to supplying Amy and Betty with a car to drive to Mexico on July 2, 2009 and allowing Muñoz and Archuleta to use his cell phone to communicate with them during the operation.  On October 8, 2009, Muñoz, Amy, Betty, Charlie, and David were indicted for possessing methamphetamine and conspiracy to possess methamphetamine. (Doc. 35.) Archuleta, however, had still not been located.

Shortly after federal agents interviewed Charlie in early August 2009, Charlie spoke with Archuleta on the phone.  During this conversation, Charlie told Archuleta that the feds were asking him questions about the July 2 smuggling incident.  Archuleta responded that there was no way he was going to let the feds catch him, that he was "strapped" with guns, and that he would not go back to prison.

On November 5, 2009, a New Mexico State Police officer patrolling near Belen, New Mexico noticed a car driving in the opposite direction with its high beam headlights.  The officer turned around and attempted to detain the vehicle, which was driven by Archuleta; however, Archuleta took off at high speed.  The car chase that ensued lasted for several minutes and was recorded on the officer's dash-mounted video camera.  Eventually, Defendant crashed his car, and the airbags deployed.  Archuleta then exited the car and laid down on the ground; however, when they attempted to arrest him, he struggled with the officers.  During this struggle, Archuleta reached

5

for his back pocket where he had a loaded handgun; nonetheless, the officers were able to overpower him and wrestle him into handcuffs.  A subsequent search of the vehicle revealed another handgun on the passenger seat of the car, a small quantity of methamphetamine and marijuana in Archuleta's sock, a duffel bag containing a digital scale, a fake New Mexico driver's license, three syringes, a cooking spoon, a smoking pipe, rolling papers, and a set of large zip ties that could be used as hand restraints.  Archuleta was also wearing a stab vest.  The video from the dash-mounted camera also allegedly shows Archuleta cursing and threatening the officers throughout the arrest.  At one point in the video, Archuleta reportedly said to one of the officers, "You're lucky that air-bag went off or you'd have been the first one."

The officers also found five cell phones in the vehicle, which contained text messages chronicling Aruchuleta's dealings with Stevo, an associate of Archuleta who sold meth in Belen. The text messages—along with the narcotics, drug paraphernalia, body armor, guns, knives, throwing stars, and zip ties—allegedly demonstrate a conspiracy between Archuleta and Stevo to deal methamphetamine in Belen.  This relationship is further confirmed in a telephone conversation Archuleta had with his girlfriend Myra that was recorded by the detention facility where he was incarcerated.  In this conversation, Archuleta discussed with Myra how he  worked as an enforcer collecting drug debts for Stevo.

> Stevo would tell them Enemy will stop by and get the money, get that money from you, and just from f***en, since I was doin' collections and s**t, f***en they'd be like, I wouldn't even be collecting on them, I would just be in the area and gonna pick up money for him and s**t, and they'd be like no, no, no, that's ok, and bam, I'd show up at the house in like five minutes, all scared that they were gonna get zip tied.

In January 2010, officers at the detention center also intercepted a letter that Archuleta had allegedly attempted to deliver to Muñoz through other Sureño gang members at the facility.  The

6

letter was addressed to "Homie" and stated in pertinent part: "WE WERE INNOCENT SO THEY

WERE GONNA GET US FOR SOMETHING WE DIDN'T HAVE S*** TO DO WITH" and "I'LL

DO LIFE BEFORE I LET THEM PUNK ME I TOLD MY LAWYER IF THEY DON'T OFFER

ME SOMETHING BETWEEN 8–13 I'LL GO TO TRIAL . . ." (caps in original).

On February 5, 2010, officers at the Luna County Detention Center found a handcuff key

in Muñoz' shoe.  The key was smuggled into the detention facility by another Sureño gang member

who had been released on furlough to attend the birth of his child.  The government asserts that

Muñoz confided in a fellow inmate, Frank, that he was planning to use the key to escape and that

he successfully used the key to release his handcuffs while being transported to federal court on

December 11, 2009.  Muñoz also told Frank that he had made a request to marry his girlfriend and

was planning to use the key to escape while being transported to the small, unsecured magistrate

courthouse for the marriage ceremony.

## III.    LEGAL STANDARD

Federal Rule of Criminal Procedure 8(a) allows the government to join multiple offenses in

a single indictment provided they "are of the same or similar character, or are based on the same

act or transaction, or are connected with or constituted parts of a common scheme or plan."

FED. R. CRIM. PRO. 8(a).  Additionally, Rule 8(b) allows the government to join multiple defendants

in a single indictment provided "they are alleged to have participated in the same act or transaction,

or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM.

PRO. 8(b).  When multiple defendants or offenses are joined in a single indictment by the

government, Rule 14 allows the trial court, in its discretion, to grant relief from prejudicial joinder.

FED. R. CRIM. PRO. 14(a).

The Supreme Court has stated that "when defendants have been properly joined under

Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that

a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539

(1993); *see also United States v. Apperson*, 441 F.3d 1162, 1190 (10th Cir. 2006).  "Defendants have

the burden of clearly showing prejudice resulting from a joint trial." *United States v. Rinke*, 778 F.2d

581, 590 (10th Cir. 1985).  Similarly, for a trial court to grant a severance of counts under Rule 14,

the defendant carries a heavy burden to demonstrate that his "right to a fair trial is threatened" if the

counts are tried together. *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir.1997); *see also*

*United States v. Valentine*, 706 F.2d 282, 290 (10th Cir.1983).

"Against the possibility of prejudice to a defendant must be weighed the benefit to the public

from avoidance of unnecessary repetition and duplication of evidence, and the elimination of extra

expense and time-consuming delays preventing achievement of speedy trial." *United States v.*

*Bailey*, 952 F.2d 363, 365 (10th Cir. 1991); *see also Rinke*, 778 F.2d at 590.  In the end, "[t]he

decision whether to grant or deny severance is within the sound discretion of the trial court, and will

not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion." *United*

*States v. Cardall*, 885 F.2d 656 (10th Cir. 1989); *see also Rinke*, 778 F.2d at 590.

## III.    ANALYSIS

### A.    Judicial Economy and Expeditious Trial Concerns

When multiple defendants are accused of having committed a single, common conspiracy,

concerns over judicial economy are particularly compelling.  In such cases, the charged crime may

be established through common evidence, and therefore, persons indicted together in conspiracy

cases should generally be tried together. *United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990).

Where a case involves the "same nucleus of facts" and the government may prove each individual

charge against the defendants through "interrelated evidence," the benefits to judicial economy of trying codefendants together are substantial. *United States v. Wardell*, 591 F.3d 1279, 1301 (10th Cir. 2009); *see also United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1234 (10th Cir. 1997). Thus, in conspiracy cases, a defendant requesting severance bears a heavy burden to show that a joint trial will affect a fundamental trial right or prejudice the jury.

In the case at hand, the second superseding indictment charges two separate conspiracies. In the first conspiracy (count 1), Defendants are charged jointly. In the second conspiracy (count 4), the government has only charged Mr. Archuleta. In the end, of the eight counts charged in the second superseding indictment, only counts 1 and 2 have a close factual relationship. The other six counts charged in the indictment primarily deal with individual acts by the Defendants. While the Court acknowledges that there would be some repetition of evidence and inconvenience to witnesses with regard to the first two counts if the Defendants were tried separately, the substantial portion of evidence presented at trial would likely not be repetitive. Consequently, concerns over judicial economy carry less weight than if Defendants had been charged jointly in both conspiracies. Additionally, with regards to concerns of judicial expediency, the Court's docket can be cleared to accommodate two trials in a timely manner. In sum, the Court finds that concerns over judicial economy and expediency are not so overwhelming in the case at hand that they necessarily eclipse other concerns.

**B.     Motions to Sever Trial**

In his first motion to sever (Doc. 158), Defendant Muñoz moves the Court to sever his trial from the trial of codefendant Archuleta, arguing that a joint trial would be prejudicial and potentially violate his fundamental trial right under the Sixth Amendment to confront witnesses against him. Muñoz argues that the letter that was allegedly sent to him by his codefendant Archuleta and

intercepted by officers at the detention center in January 2010 would be admitted during a joint trial;

whereas, if the two codefendants were tried separately, the letter would be inadmissible at his trial.

In addition to this letter being highly prejudicial, Muñoz argues that it would violate the Supreme

Court's holding in *Bruton v. United States*, 391 U.S. 123 (1968).  In *Bruton*, the U.S. Supreme Court

held that in a joint trial, the admission of a codefendant's confession implicating another defendant,

where the codefendant does not testify at trial, violates the defendant's Sixth Amendment right to

confront witnesses against him. 391 U.S. at 137.  Thus, Muñoz argues that in a joint trial,

Archuleta's letter, which represents an admission or confession on the part of his codefendant, could

be used to unjustly implicate him without the opportunity to cross examine Mr. Archuleta.

The government counters that Muñoz' assertion that the letter would violate *Bruton* is

misplaced, as this "rule does not apply to 'statements that are not directly inculpatory but only

inferentially incriminating.'" *United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007) (quoting

*United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir. 2000)).  The government argues that

the only inculpatory statement in Archuleta's letter is that if he didn't receive a plea offer of eight

to thirteen years from the government, he was going to trial, and that this is only inferentially

inculpating.  However, the letter also inculpates Muñoz by providing additional evidence of a

conspiracy between Archuleta and Muñoz.  Therefore, there is at least a credible argument that the

letter is more than inferentially inculpating.

Nonetheless, the government also argues that the letter is non-testimonial in nature, and

therefore, *Bruton* does not apply, even if the statement is found to be directly inculpating. *See*

*Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).  In *Crawford*, the Supreme Court explained

that the Sixth Amendment "bars admission of *testimonial* statements of a witness who did not appear

at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-

examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (emphasis added); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Crawford* . . . the Confrontation Clause has no application to [non-testimonial] statements and therefore permits their admission even if they lack indicia of reliability.").

"A statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005); *see also United States v. Smalls*, —F.3d—, 2010 WL 1745123 at *9 (10th Cir. May 3, 2010).  The government argues that at the time Archuleta made the statement he was talking to Muñoz as a fellow gang member, "homie-to-homie," and therefore, the statement was clearly non-testimonial because the environment did not include the formality that would lead a reasonable person to believe the statement might later be used in the investigation or prosecution of a crime.  Indeed, Archuleta's letter bears none of the hallmarks of a testimonial statement: it was not made under oath, it was not made in the course of an investigation, and it was not a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51.  Accordingly, the Court agrees that *Bruton* does not apply to Archuleta's letter, and a joint trial would likely not result in a violation of Muñoz' fundamental right to confront witnesses against him.  Nonetheless, a joint trial might still be prejudicial.

In their motions to sever (Docs. 158 & 182), Defendants argue that a joint trial would be unfairly prejudicial to both of them.  Muñoz argues that admission of the video of Archuleta's arrest at trial would unfairly prejudice him because a jury might hold Mr. Archuleta's violent outbursts and statements against Muñoz.  Archuleta argues that he would be prejudiced by Muñoz' attempted escape as it could lead a jury to infer that Muñoz was guilty, and therefore, Mr. Archuleta must be

guilty as well.  Additionally, Archuleta argues that a joint trial would be prejudicial because he is charged in both conspiracies while Muñoz is only charged in one conspiracy, and this would unfairly paint Archuleta as the leader of the conspiracies.

The government counters that joint trials of defendants who are indicted together are strongly preferred as "[t]hey promote efficiency and 'serve the interests of justice.'" *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)); *Rinke*, 778 F.2d at 590.  Additionally, the government argues this burden is even stronger here because Defendants have been jointly charged with a conspiracy. *See Wardell*, 591 F.3d at 1299 ("we recognize a presumption in a conspiracy trial that coconspirators charged together should be tried together"); *United States v. Hines*, 696 F.2d 722, 732 (10th Cir. 1982) ("It is axiomatic that individuals who are charged with engaging in a conspiracy should be tried together, especially where proof of the defendants' complicity in the conspiracy is based on the same evidence and acts." (quoting *United States v. Graham*, 548 F.2d 1302, 1310 (8th Cir.1977)); *United States v. Ellender*, 947 F.2d 748, 754 (5th Cir. 1991) ("Joinder of defendants is particularly appropriate when conspiracy is one of the charges.").

The government further asserts that there is evidence indicating that all of the conduct charged in counts 1–7 of the Second Superseding Indictment was part of a conspiracy by the Defendants to smuggle methamphetamine into the United States and then distribute it in New Mexico, and that Muñoz organized most of the importation of the narcotics while Archuleta acted on the distribution end by collecting money from customers in Albuquerque and Belen.  At trial, the government plans to introduce evidence of the role that "enforcers" play in a drug trafficking enterprise.  As proof of this conspiracy, the government points to Archuleta's conversation with his girlfriend Myra, where he admitted serving as an enforcer for Stevo, and the items that were seized when he was arrested on November 5, 2009.  Accordingly, the government argues that this was a

coherent, integrated, and mutually interdependent conspiracy and that Defendants have therefore been appropriately joined together for trial.

The Court, however, is not as convinced. While the evidence for counts 1 and 2 is interrelated, the evidence for the other six counts is not. Furthermore, it is not clear that much of the evidence for the other six counts would be admissible if the Defendants were tried separately. For example, the video of Archuleta's arrest would not be admissible against his codefendant; nor would the drugs, guns, and other evidence seized from Archuleta when he was arrested; or evidence and testimony regarding Archuleta's role as drug enforcer. Similarly, Muñoz' attempted escape from federal detention would not be admissible against Archuleta.

The government, however, argues that the video of Archuleta's arrest would not be unfairly prejudicial to Muñoz because the evidence is not so extreme that a jury could not follow a proper instruction to consider the video only against Archuleta. *See Hines*, 696 F.2d at 732 (finding that prejudice results only where the evidence is such that the jury cannot compartmentalize it against each defendant). Nonetheless, the Court finds that the video of Archuleta is likely to be highly prejudicial against his codefendant, and the video would not be admissible against Muñoz if he were tried individually. *See Wardell*, 591 F.3d at 1301.

Additionally, while it appears that the Defendants are linked through the original July 2, 2009 conspiracy, the government's claim that Muñoz is linked to the larger conspiracy from June 1, 2009 through November 5, 2009 charged against Archuleta in count 4 seems rather tenuous. In the end, the Court finds the video and other evidence of Archuleta's activities is likely to be highly prejudicial and may taint the jury against Muñoz if the two Defendants were tried together. This evidence has the potential to "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Also, it will be difficult for the jury to compartmentalize the

evidence against each defendant and there is a potential for confusion as to what items of evidence are admissible against each defendant. *See Hines*, 696 F.2d at 732. The Court will therefore sever Defendants' trials in the interest of justice.

### B. Motions to Sever Counts

In Defendant Archuleta's Motion to Sever Counts (Doc. 185), he moves the Court for an order severing counts 1 & 2 from counts 4, 5, 6, and 7 of the Second Superseding Indictment. Mr. Archuleta argues that prejudice may result if the counts are not tried separately because the jury may rely on evidence of one crime to infer a criminal disposition and find guilt. *United States v. McCarter*, 316 F.3d 536, 540–41 (5th Cir. 2002) (finding that government had added counts to buttress a weak case on other counts); *United States v. Halloway*, 1 F.3d 307, 312 (5th Cir. 1993) (finding that joinder of remote weapons charge with robbery charge unfairly influenced the jury). Furthermore, Defendant argues that the jury may prejudicially cumulate the evidence of multiple crimes to find Defendant guilty. *United States v. Massa*, 740 F.2d 629, 644 (8th Cir. 1985) (noting a jury's inability to compartmentalize evidence).

The government argues, however, that the Albuquerque-Belen drug conspiracy and the Las Cruces drug conspiracy both arose out of a common scheme by Archuleta to import and distribute methamphetamine in New Mexico, and therefore, the two methamphetamine conspiracies, possession charges, and related weapons charges are properly joined. Additionally, the government argues that the firearms were sufficiently connected to Archuleta's drug activities, and therefore, severing the weapons charges from the drug charges would be improper. *United States v. Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001); *Johnson*, 130 F.3d at 1427 (finding it reasonable for a jury to infer that handgun aided or assisted defendant in drug transactions).

In the Court's opinion, the conspiracy charges (counts 1 & 4), weapons charges

(counts 5 & 6), and possession charges (count 2 & 7) do not appear to have been joined by the government merely to buttress a weak case. *See McCarter*, 316 F.3d at 540–41.  Additionally, the charges are of similar character and appear to be part of a continuing scheme or plan by Mr. Archuleta to participate in the importation and distribution of methamphetamine in New Mexico. *See* FED. R. CRIM. PRO. 8(b); *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004) (affirming a district court's refusal to sever drug charges from firearms charges where the relationship of the charges grew out of defendant's own conduct).  In order for the Court to grant a severance of counts under Rule 14, a defendant carries a heavy burden to demonstrate that his "right to a fair trial is threatened" if the counts are tried together. *Johnson*, 130 F.3d at 1427; *see also Valentine*, 706 F.2d at 290.  The Court does not believe that Defendant has met this burden.

The Court has already substantially reduced any potential for prejudice to Mr. Archuleta by severing his trial from that of his codefendant Muñoz.  While Muñoz' connection to the events that occurred after the initial July 2, 2009 conspiracy seems rather tenuous, the facts alleged as to Mr. Archuleta in connection with counts 1, 2, 4, 5, 6, and 7 appear to be part of a continuing series of events related to Mr. Archuleta's efforts to import and distribute methamphetamine in New Mexico.  Therefore, the Court finds that it would be inappropriate to sever these counts.

In his Second Motion to Sever (Doc. 187), Mr. Muñoz asks that the Court sever count 8 (attempted escape) from the other charges against him as the attempted escape occurred at least five months after the other charges with no allegation of any continuing criminal behavior in between; therefore, the escape charges are too far removed from the time of the underlying offense and would only serve to prejudice the jury.  The government counters that a jury may draw a permissible inference of guilt from Mr. Muñoz' attempt to escape. *United States v. Akers*, 215 F.3d 1089, 1103 (10th Cir. 2000).  When an attempted escape is sufficiently connected to the underlying charges for

which one is incarcerated, a single trial is permitted as the motive to escape may be to avoid prosecution for the underlying charges. *See United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir. 1978) (citing *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir. 1969)).  Furthermore, the Tenth Circuit has "declined to adopt a rule that a defendant's flight must occur soon after his arrest to be probative of guilt." *Akers*, 215 F.3d at 1102.  Accordingly, the Court finds that severance of count 8 would be inappropriate.

Finally, Defendant Muñoz argues that if count 8 is tried jointly with the other counts, the jury should be able to hear evidence of the sentence he is facing (life without parole), as this likely influenced his decision to attempt escape.  The government counters that this argument is factually inaccurate, as the life sentence did not become effective until February 9, 2010, after the escape attempts, when the government filed its Amended Information to Establish Prior Conviction. (Doc. 153.)  Before that, Muñoz had the option to plead guilty without facing a mandatory life sentence.

The government also argues that any reference by Muñoz to the penalty he faces upon conviction would be prejudicial and encourage jury nullification. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (finding that "a jury has no sentencing function," and "it should be admonished to 'reach its verdict without regard to what sentence might be imposed'" (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975))); *United States v. Gonzalez*, 596 F.3d 1228, 1237 (10th Cir. 2010) ("we disapprove of the encouragement of jury nullification"); *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("presenting information to the jury about possible sentencing is prejudicial"). The Court agrees.  Consequently, the jury is strictly prohibited from hearing any evidence relating to Mr. Muñoz' potential sentence.

IV.     CONCLUSION

The Court finds that if Defendants were tried jointly, the video of Mr. Archuleta's arrest and other evidence against him would be prejudicial to Mr. Muñoz and may taint the jury.  Similarly, evidence of Mr. Muñoz' escape attempt could be prejudicial to Mr. Archuleta.  Additionally, the Court believes it would be difficult for a jury to compartmentalize the evidence against each defendant, and this could result in confusion as to what items of evidence are admissible against each defendant.  When weighed against concerns over judicial economy and expediency, the Court finds that granting a severance of Defendants' trials is in the interest of justice.

The Court will not however sever the individual counts against Defendants into separate trials.  The Court finds that the charges against Mr. Archuleta are of similar character and appear to be part of a continuing scheme or plan by Defendant to promote the importation and distribution of methamphetamine to New Mexico.  Additionally, by severing the trials, the Court has already substantially reduced the potential for any prejudice to Defendant.  When the chance for prejudice that might result from trying the counts together is weighed against concerns of judicial economy and expediency that would result if the Court were to hold multiple trials for each defendant, a severance of counts is inappropriate in the case at hand.

Finally, with respect to the escape charge against Mr. Muñoz, the Court finds that it is sufficiently connected to the underlying charges for which he was incarcerated to permit a single trial.  As a jury is permitted to infer that Defendant's motive for escape may have been to avoid prosecution, the Court is not concerned that Defendant will be prejudiced.  Finally, any reference to the penalty Defendant faces if convicted is strictly prohibited as it would be prejudicial and encourage jury nullification.

17

**WHEREFORE,**

**IT IS HEREBY ORDERED** that (1) Defendant Muñoz' Motion to Sever (Doc. 158) is

GRANTED; (2) Defendant Archuleta's Motion for Relief from Prejudicial Joinder (Doc. 182) is

GRANTED; (3) Defendant Archuleta's Motion to Sever Counts (Doc. 185) is DENIED; and

(4) Defendant Muñoz' Second Motion to Sever (Doc. 187) is DENIED.


**ROBERT BRACK**
**U.S. DISTRICT COURT JUDGE**